Blount v. Hamey.

HELEN BLOUNT, Respondent, v. SYLVESTER HAMEY,
Appellant.

Kansas City Court of Appeals, February 2, 1891.

1. **Fraudulent Conveyances:** LOANER AND LOANEE: TITLE OF
VENDEE OF LOANEE'S ADMINISTRATOR. Plaintiff owned a span of
mules and loaned them to H., her son, who retained them for five
or six years and died. One S. then took possession of the mules
(whether as agent of plaintiff or administrator of H. seems to be
in doubt), and sold them at administrator's sale to defendant.
*Held,* per SMITH, P. J. (finding that the possession of S. was as
agent of plaintiff). that the defendant was not protected by the
provisions of section 5173, Revised Statutes, 1889 ; that the death
of H. acted as a revocation of the loan, and the defendant pur-
chasing at the administrator's sale was in no sense " a creditor or
purchaser of the person so remaining in possession." But *held* per
GILL, J., ELLISON, J., *concurring,* that the statute contemplates
just such a case as this, and that the entire possession was that of
H., and a purchaser from H. or his administrator was a purchaser
from the "person remaining in possession."

2. **Administration:** WHAT ARE ASSETS. Assets consist of all
those goods and chattels which were of the deceased in right of
action or possession as his own and so continued to the time of his
death and which after his death the administrator gets into his
hands, as duly belonging to him in the right of his administrator-
ship.

3. **Evidence:** DECLARATIONS OF PARTY IN POSSESSION. The declara-
tions of a party may in some cases be received in evidence to char-
acterize his possession. So, too, the declarations of a party in
possession of personal property against his title are admissible, but
declarations by him on other occasions in support of his title are
not admissible even in rebuttal.

*Appeal from the Buchanan Circuit Court.*—HON.
O. M. SPENCER, Judge.

REVERSED AND REMANDED.

*James W. Boyd* and *Ben Phillips*, for appellant.

(1) The court erred in refusing to give the instruction in the nature of a demurrer to the evidence asked for at the close of respondent's case, and instruction, numbered 1, asked at the close of the testimony on behalf of the appellant. R. S. 1879, secs. 2500, 2501 (same sections, 5173 and 5174, R. S. 1889); *Cook v. Clippard*, 12 Mo. 379; *Layson v. Rogers*, 24 Mo. 192. Admitting that the evidence shows such a possession of the mules in respondent by her agent as the law requires, between the death of Henry P. Blount and the time James Shephard took possession of them as the administrator of Blount's estate, still it was a question for the jury under proper instruction to say whether there was such possession in plaintiff, and appellant's instruction, numbered 2, should have been given. The ordinary rules of common law relating to bailments have no application in a case like this which is governed entirely by our own statutes. (2) The court erred in admitting evidence of conversations had with James Shephard before he was appointed administrator of Blount's estate, and of conversations had in his presence with James Blount. Any statements or agreements that Shephard may have made before he was appointed administrator, on any theory of this case, could not affect appellant's rights. (3) The court erred in refusing the offer made by appellant to prove that Henry P. Blount from 1882 up to the time of his death, and while in the actual possession of the property in controversy, claimed to hold the mules as owner, and that he was the owner. *Railroad v. Clark*, 68 Mo. 374; *Darrett v. Donnelly*, 38 Mo. 492; *Gorden v. Ritenour*, 87 Mo. 59.

*Ryan & McDonald*, for respondent.

(1) So long as the goods and chattels loaned remain in the possession of the person to whom they are

loaned, the relation existing between the lender and loanee is simply that of bailment at common law; and section 2500, Revised Statutes, 1879 ( being R. S. 1889, sec. 5173 ), creates during that time no new relation, and does not abrogate the common-law principles relating to-bailment.   And it is a bailment and good as such as between lender and loanee, the parties to it, it matters not what length of time may have elapsed since the goods were loaned.   *Smoot v. Wathen*, 8 Mo. 375, side p. 522.   (2)   The term of the bailment of the mules not being certain and specified, it was revocable at the pleasure of the bailor.   And the death of the bailee with the goods in his possession operated *ipso facto* as a revocation of the bailment.   *Smiley v. Allen*, 13 Allen, 465. (3)   Though the loan in this case was void by statute after the lapse of five years as to creditors and purchasers, between the parties it was still a good loan, and the bailee dying with the property in his possession, as in the case at bar, the property was not assets of the estate, and could not be taken as such by the administrator. *Smoot v. Wathen*, 8 Mo. 377, side p. 524, par. 1; *Criddle's Adm'r v. Criddle*, 21 Mo. 522.   And Hamey, the purchaser, was not a creditor, and could not be such a purchaser from the loanee, he being dead, as the statute contemplates.   *Criddle v. Criddle, supra.*   The act of Shephard, administrator, therefore, in taking said mules as assets of the estate of H. P. Blount, and selling them, was illegal, conveyed no title, and Hamey, the purchaser, took no title, as he could get no more than the administrator took as such.   *Smoot v. Wathen, supra.* (4)   The statute relied upon by defendant of five years' possession is a statute of limitation, and the five years' possession claimed must be adverse.   *Smoot v. Wathen, supra.*   The possession of H. P. Blount, deceased, was never adverse.   (5)   The evidence of plaintiff proves unquestionably that James Shephard, administrator, agreed and undertook before he was appointed administator to take possession of the property in controversy

for and as the agent of plaintiff, and did so, at least con-
structively, by using them in gathering corn.    And that
possession was the possession of plaintiff and termi-
nated the bailment.   (6)   The court committed no error
in refusing the offer made by appellant to prove by wit-
ness Shephard, "that during the time from 1882, up to
Henry Blount's death, he, witness, frequently saw
Henry Blount in possession of those mules, and he
claimed frequently when witness saw him to own the
mules, and made the claim while he was in actual pos-
session of them, and then claimed to hold them as
owner and that he was then the owner." · It was a
plain and direct attempt to make title for Henry Blount
by his own declarations. *Criddle's Adm'r v. Criddle,*
*supra.*

SMITH, P. J.—This was an action of replevin
to recover the possession of a span of mules.   The
evidence adduced at the trial tended most strongly to
show that plaintiff was the owner of two young and
unbroken mules ; that Henry Blount, a son of plaintiff,
took the mules to break and use until the plaintiff
should want them ; that Henry took the mules to his
own place, and then broke and used them for five or six
years and until his death in 1888 ; that several witnesses
testified to statements made by Henry to each of them at
various times and up to within a few months preceding his
death to the effect that the mules were the property of
the plaintiff.   This is not contradicted by any other
testimony.   It seems that after the death of Henry, and
on the day of his burial, the plaintiff had a conversation
with James Shephard, who afterwards became the
administrator of Henry's estate, in which she remarked,
"Mr. Shephard, you know I have a pair of mules at
Henry's," and he replied, "Yes."   She then said, "Will
you take the mules over to your place, fix them up, sell
them for me, and I will pay you whatever is right for your
trouble?"   Shephard said he would do that after the

corn was gathered at Henry's place. Subsequently Shephard, becoming administrator of Henry Blount's estate, listed the mules in his possession and sold and delivered them to the defendant as the property of said estate. Plaintiff had judgment in the trial court, and defendant appealed.

I. The statute in relation to fraudulent conveyances, section 5173, Revised Statutes, 1889, provides that when any goods or chattels shall be pretended to have been loaned to any person with whom, or those claiming under him, possession shall have remained for the space of five years without demand made, and pursued by due process of law on the part of the pretended lender, or when any reservation or limitation shall be pretended to have been made of any use of property, by way of condition, reservation or remainder, or otherwise, in goods or chattels, the possession whereof shall have remained in another, the *same shall be taken, as to 'all creditors and purchasers of the person so remaining in possession, to be void*, and that the absolute property is with the possession unless such loan, reservation or limitation of use of property was declared by will or deed in writing, proved or acknowledged and recorded as required by section 2499.

The death of Henry Blount, the loanee of the property, operated as a revocation of the loan. Story on Bailment, sec. 277, The evidence shows that the plaintiff, by her agent Shephard, took possession of the property so that it was never lawfully in the possession of the administrator. His possession, and that of his vendee, was tortious. But, however this may be, the defendant purchasing at the administrator's sale was in no sense "a creditor or purchaser of the person so remaining in possession." This statute cannot for that reason be invoked by the defendant to uphold his claim to the property. The cases cited by the defendant: *Cook v. Clippard*, 12 Mo. 245; *Nyson v. Rogers*, 24 Mo. 192, were where the loanee had sold the property, and the

controversy respecting the title was between the loaner and the purchaser from the loanee. The defendant is not a purchaser from the loanee, and, therefore, can derive no protection from its provisions. Even if the loan was void under the statute the defendant, being neither a creditor nor a purchaser of Henry Blount, is in no situation to controvert plaintiff's title. The property at the death of Blount was still a loan, and did not become assets of his estate to which his administrator was entitled. *Smoot v. Wathen*, 8 Mo. 524 ; *Criddle's Adm'r, v. Criddle*, 21 Mo. 522. There is not the slightest evidence that the deceased claimed the property adversely to the plaintiff ; on the contrary the evidence is overwhelming that he did not.

The plaintiff's right to the possession of the property as against the defendant did not depend upon whether she had the possession after the death of Henry Blount or not. The defendant is in no better situation than the administrator as respects the title to the property—the latter had no title to pass to defendant by sale. The mules in controversy were not assets in the hands of the administrator within the well-established meaning of that term. Assets consist of all those goods and chattels which were of the deceased in right of action or possession as his own and so continued to the time of his death, and which after his death the administrator gets into his hands as duly belonging to him in right of his administratorship. Williams on Executors, 1656. How can the defendant claim the benefit of the statute, when he is not within its terms, being neither a creditor of the loanee during his lifetime, nor of his estate, nor a purchaser of him ? The death of Henry Blount put an end to the relation of bailor and bailee. It extinguished the bailment. There was neither bailor nor bailee. There is no such thing as the relation of bailor and bailee being created between plaintiff and the administrator by operation of law. Before the statute can apply in any case there must *ex necessitate rei* be a bailee in

whose possession the property loaned is, and then there must be a creditor or purchaser claiming some right thereto through the bailee, and if these conditions are wanting it is quite difficult to see how the statute has any application, however liberally it may be construed. The relation of bailee and bailor was not only extinguished by the death of Henry Blount, but the evidence, as has already been stated, shows that the property in controversy was taken into possession by the plaintiff, and was constructively in her possession when purchased by the defendant. The defendant bought the mules at his own risk. He must be presumed to have known that the rule of *caveat emptor* was applicable to the sale. Benj. on Sales, sec 640, note *K; Hensley v. Baker*, 10 Mo. 157.

There was, therefore, no error in the rulings of the court below in respect to the giving and refusing instructions. The defendant contends that the court erred in rejecting his offer to prove that the deceased while in the actual possession of the mules claimed to hold them as owner. We cannot see that the rejection of this offer was injurious to the defendant, in view of the concurrent testimony of nearly all the witnesses to the fact that he again and again declared that the property was that of plaintiff, and that he was using it, and in possession as a loanee. Such declarations of deceased, if proven, would have very little, if any, probative effect to destroy the declarations he had made to the witnesses against his interest. The declarations of a party may in some cases be received in evidence to characterize his possession of property. So, too, the declarations of a party in possession of personal property against his title are admissible, but declarations by him on other occasions, in support of his title, are not admissible, even in rebuttal. *Criddle's Adm'r v. Criddle*, 21 Mo. 522.

No error is perceived in the record materially affecting the results. The judgment should be affirmed.

Blount v. Hamey.

SEPARATE OPINION.

GILL, J.—I cannot concur with the foregoing opin-
ion by Judge SMITH. In the first place the presiding
judge is in error in assuming, as an incontrovertible
fact, that the plaintiff after the death of her son took
possession of the mules. The evidence on that point is
conflicting, as inspection of the record shows. Indeed,
it seems to me that the preponderance is rather in favor
of defendant's contention, to-wit, that Shephard, the
administrator, took possession only as the representa-
tive of the deceased son, and not, at any time, as the
agent of the plaintiff.

Moreover, I do not agree with the views of the
learned judge as to the law of this case as set out in his
opinion. In effect, it is there held that though Henry
Blount, for the period of six years before his death
(as the evidence tended to prove), had the continuous
possession of the mules under a loan from his mother,
the plaintiff; and though at Henry's death Shephard the
administrator took and continued that possession till a
sale was effected to defendant Hamey, yet that the
defendant is not such a purchaser as was intended to be
protected by section 5173, Revised Statutes, 1889. It
seems that such a construction of this section of our
statute of fraudulent conveyances is too narrow, and
one not calculated in many cases to give effect to its
beneficent provisions. In the construction of such stat-
utes it is the policy of the law to expound the same
liberally—according to its *spirit* rather than a tena-
cious clinging to the *word*. Wait on Fraud. Convey-
ances, sec. 20; 2 Bigelow on Fraud, p. 115. The
obvious intent of section 5173 was to protect creditors
and purchasers from pretended and fraudulent loans.
In cases where the lender gives possession of the chat-
tels to the loanee and permits him to retain such pos-
session for five years, the law assumes that such loanee

has the title, and will protect the purchaser or creditor by declaring the loan void as to them. The statute, as is seen by a careful reading, provides not only for the possession of the borrower for five years, but of "*those claiming under him*," clearly, it seems, contemplating just such a case as this, where Henry Blount and his representative—his administrator—held a continuous possession for more than six years. This entire holding possession was that of Henry Blount, and a purchaser from said Henry, or from his administrator, was a purchaser from "the person remaining in possession."

In my opinion *Smoot v. Wathen,. Adm'r* ( 8 Mo. 522), and *Criddle's Adm'r v. Criddle* ( 21 Mo. 522 ), have no bearing on the question at issue here. In both those cases the administrator of the deceased loanee sought to claim title of the property loaned as against the lender; and it was held that, while the loan accompanied by five years' possession would be void as to purchasers and creditors, yet such loan was valid as between the parties to the loan, or as between the lender and the administrator of the loanee—that the administrator of such loanee could not, as representing the creditors of his intestate, impeach the title of the lender. Because the administrator of the loanee then cannot avail himself of this provision of the statute to defeat the lender's title, it does not follow therefrom that a *purchaser* from such administrator cannot. Neither is it correct to say that, as the administrator has in fact no title as against the lender, therefore, a *purchaser* from the administrator can acquire no title. For that matter the original loanee has no title as against the lender, whatever may be the duration of his possession; yet if the loanee, after five years' possession, shall sell the property to a third person, such party acquires the absolute title as against the lender. So then it is immaterial what may be the rights of lender and loanee as between themselves.

In my opinion, therefore, the trial court should have given defendant's instruction, numbered 2, and should have refused plaintiff's, numbered 1 and 2. The judgment of the circuit court should be reversed, and the cause remanded for a new trial. Judge ELLISON concurring, it is so ordered.