John M. MANN, Plaintiff-Appellant,

v.

Emile PIGG, Defendant-Respondent.

No. 30657.

St. Louis Court of Appeals.

Missouri.

July 18, 1961.

Motion for Rehearing and to Modify Opinion or to Transfer to Supreme Court Denied Sept. 5, 1961.

Victor R. Witte, Jr., St. Louis, for appellant.

Joseph Nessenfeld and Harry M. James and Schwartz, James & Swect, St. Louis, for respondent.

JAMES D. CLEMENS, Special Judge.

Plaintiff motorist was injured at an intersection when making a left turn in front of defendant motorist, who was coming from the opposite direction. Plaintiff's $7,600 verdict was set aside and judgment rendered for the defendant. Plaintiff appeals. The initial questions here presented are these: Was plaintiff so contributorily negligent as a matter of law to preclude recovery on his charge of primary negligence? Was defendant guilty of humanitarian negligence?

The collision happened about midnight. Plaintiff was driving south and defendant driving north on Morganford, a four-lane street, where it intersects with Wyoming, a 30-foot east-west street. Plaintiff had gotten into his parked car on Morganford and headed south at 15 miles per hour, intending to turn to his left into Wyoming. Plaintiff maintained this speed up to the moment of impact. Meanwhile, defendant was headed north on Morganford, also approaching Wyoming, and intending to continue across it. The evidence of the collision favorable to plaintiff follows. Plaintiff lit his headlights, and as he approached Wyoming turned on his left-turn blinker lights. The intersection was well lighted. When plaintiff was 30 feet north of Wyoming he saw defendant at a point later determined to be 168 feet south of Wyoming, and thus 228 feet south of plaintiff's position. Plaintiff could not then estimate defendant's speed, but assumed it was not excessive. Plaintiff looked to his right and then to his left on Wyoming. Without again looking toward defendant, the plaintiff drove to the center of Wyoming and then turned left across the center-line of Morganford. Plaintiff had moved about 11 feet into the east half of Morganford when the two cars collided. The logical inference is that it was the front end of each car that collided with the other. Plaintiff's injuries were substantial, but present no issue on this appeal.

At plaintiff's request the trial court gave two verdict-directing instructions. Instruction No. 4 conjunctively submitted the primary negligence questions of lookout and excessive speed. Instruction No. 2 conjunctively submitted humanitarian negligence in failure to slacken speed and swerve. There was a ten-juror verdict and judgment for the plaintiff. In due time the trial court granted defendant's after-trial motion for judgment based upon his previously denied motion for judgment filed at the close of the evidence. In the alternative, the trial court granted defendant's motion for a new trial based on the grounds that the verdict was against the weight of the evidence and the result of prejudice by the jury, and that both of plaintiff's verdict-directing instructions were erroneous.

First, we consider the submissibility of plaintiff's case of primary negligence:

■ Defendant asserts and plaintiff denies that evidence favorable to plaintiff shows him to be contributorily negligent as a matter of law in making a left turn into the path of defendant's on-coming car. The plaintiff's duty in this case is set by Section 304.021, Subdivision 3 RSMo 1959, V.A.M.S.

"The driver of a vehicle *within* an intersection intending to turn to the left shall yield the right of way to any vehicle *approaching from the opposite direction* which is within the intersection or *so close thereto as to constitute an immediate hazard.*" (Emphasis supplied).

This statute required that when plaintiff was within the intersection intending to turn to his left, that he then exercise the highest degree of care to determine whether defendant's on-coming car was so close to the intersection as to constitute an immediate hazard. If it was, plaintiff should have yielded the right of way. MacArthur v. Gendron, Mo.App., 312 S.W.2d 146 (9, 10); Carpenter v. Kessner, Mo.App., 330 S.W.2d 270(3).

Plaintiff's evidence set his own speed at 15 miles per hour. In his brief, plaintiff estimates the defendant's speed at 45 miles per hour. This is established by plaintiff's evidence that from the moment he first saw defendant, the plaintiff traveled at 15 miles per hour approximately 56 feet to the point of impact, while defendant was traveling three times that distance, 168 feet, to such point. It follows that defendant's speed was three times that of plaintiff, or 45 miles per hour. At 15 miles an hour, it took plaintiff two seconds to travel 45 feet from the place where he looked (30 feet north of the intersection) to the center of Wyoming, where he commenced his left turn. During that two seconds defendant, at 45 miles an hour, would have traveled 135 feet, which would mean that defendant's automobile was only 33 feet south of the intersection when plaintiff commenced his left turn. Reasonable minds could not differ concerning the proposition that a vehicle 33 feet from an intersection, traveling 45 miles an hour, is so close to the intersection as to constitute an immediate hazard to any vehicle which undertakes to make a left turn in front of it. For a motorist to turn left across the center line into the path of a vehicle approaching from the opposite direction which is no more than 33 feet from the intersection and traveling at 45 miles per hour would indicate an unreasonable risk of collision and constitute an immediate hazard to all reasonable minds. It was the statutory duty of plaintiff to yield the right of way to defendant under these circumstances, which he failed to do.

Plaintiff cites Carpenter v. Kessner, supra, as authority for the proposition that the question of immediate hazard is for the jury under the statute now being considered. It was there so held. In that case, however, the plaintiff looked the moment he began his left turn and saw the approaching defendant still 100 feet short of the intersection. That was an almost-escaping case because the left-turning plaintiff was within two feet of clearing the intersection when the rear of his car was struck by the approaching defendant. Those two factors distinguish that case from this. Other cases cited by defendant involve cross-traffic intersectional collisions to which the cited statute is not applicable. Those cases are deemed not to be in point.

So, we hold that plaintiff was guilty of negligence as a matter of law. Clearly, plaintiff's negligence in turning into defendant's path contributed to defendant's injuries. Hence it was error to submit the case to the jury on the issue of defendant's primary negligence. Hamilton v. Laclede Electric Cooperative, Mo., 294 S.W.2d 11 (3).

Next, we consider the submissibility of plaintiff's case of humanitarian negligence:

Plaintiff asserts and defendant denies that the evidence favorable to plaintiff warranted the submission on the failure of defendant to slacken speed and swerve after plaintiff came into a position of peril. Plaintiff says he came into a position of peril at the moment he began his left turn. Looking back to the moment when plaintiff first saw defendant, we note that he was then 30 feet north of Wyoming. He traveled this 30 feet and an additional 15 feet to the middle of Wyoming, and then turned left. He had moved to his left about 11 feet into the east half of Morganford when the cars collided. Plaintiff acknowledges this 56 feet of travel at a constant speed of 15 miles per hour. Thus, plaintiff was traveling approximately 22 feet per second. Accepting these distances and speed, we note that plaintiff did not come into his claimed position of peril until he was 11 feet, or one-half second, short of the point of collision. Defendant was then traveling at 45 miles per hour, three times plaintiff's speed. When plaintiff's claimed peril thus arose, the defendant was only 33 feet back from the point of collision. It is obvious that defendant, within that one-half of a second, could not

react to plaintiff's peril, let alone act to avoid it. Ornder v. Childers, Mo., 327 S.W.2d 913(2); and Hendershot v. Minich, Mo., 297 S.W.2d 403(5). So, we hold that the trial court erred in submitting the case under plaintiff's humanitarian instruction.

The evidence most favorable to the plaintiff did not entitle him to go to the jury either on primary or humanitarian negligence. The defendant's motion for a directed verdict should have been granted at the close of the evidence. The trial court properly set aside the verdict and entered judgment for the defendant in accordance with defendant's after-trial motion for judgment.

The judgment for defendant should be affirmed, and it is so ordered.

ANDERSON P. J., and WOLFE, J., concur.

RUDDY, J., not participating.